# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRANDON B. FLETCHER, <br><br> Defendant. | Case No. 24-00114-01-CR-W-RK |

## **PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement that the parties request be made binding upon the Court upon its acceptance of the plea agreement. The parties request that the Court impose a sentence of imprisonment between 204 and 240 months, 3 years of supervised release, no fine, and a $600 special assessment, as more fully described below.

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by R. Matthew Price, United States Attorney, and Ashleigh A. Ragner, Assistant United States Attorney, and the defendant, Brandon B. Fletcher ("the defendant"), represented by William J. Raymond.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Counts One, Three, Four, Seven, Eight, and Nine of the Indictment. In Count One, the defendant

is pleading guilty to Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. In Counts Three, Seven, Eight, and Nine, the defendant is pleading guilty to Carjacking or Attempted Carjacking, in violation of 18 U.S.C. § 2119. In Count Four, the defendant is pleading guilty to Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). By entering into this plea agreement, the defendant admits that he knowingly committed these offenses and is in fact guilty of the offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

### *Count One*:

On June 22, 2023, at approximately 8:52 p.m., officers with the Kansas City, Missouri Police Department (KCMOPD) responded to the McDonald's Restaurant at 8326 Wornall Road, Kansas City, Missouri. That location is within the Western District of Missouri. The officers were dispatched regarding an armed robbery involving shots fired.

The two victims, A.M. and K.D., were contacted by officers. K.D. was working the drive-thru window. A customer, the defendant, returned to the drive-thru window because there was a mistake in his order. The defendant said, "I just want my money." K.D. went to obtain the help of his manager, A.M. A.M. told the defendant that she could give the correct order or refund the original order if the wrong order was provided back to the restaurant. A.M. observed the McDonald's bag in the car. The defendant said, "Give me the money!" and grabbed a black revolver and pointed it at A.M. and K.D. The defendant then fired two shots into the restaurant. Officers observed two apparent bullet impact marks in the building. The victims provided officers with the receipt from the defendant's original order showing a time of 8:37 p.m.

Surveillance video from McDonald's revealed an older dark gray Toyota Corolla sedan bearing the Missouri license plate NA7L4C was at the drive-thru window speaking to the employees and then fired two shots into the building before he sped away. A computer search of the license plate revealed it was registered to the defendant. Officers obtained a photo of the defendant and determined he matched the description of the suspect. The vehicle registration listed an address of 6405 Brookside Boulevard, #3N, Kansas City, Missouri.

At approximately 10:10 p.m., officers with the KCMOPD responded to 6405 Brookside Boulevard to follow-up on the robbery reported at the McDonald's restaurant. Upon arrival, officers observed the defendant's vehicle used in the attempted robbery. The officers began to check the vehicle prior to ordering a tow.

2

While one officer was filling out the tow form, the other officer noticed a male was standing on the concrete steps of the apartment building as if he had just exited the building. Officers noted the male matched the description of the robbery suspect. When officers exited their vehicle and approached the male, they recognized the male as the defendant based on their review of a previous booking photo. The defendant produced a firearm and fired shots at the officers and an officer returned fire. The defendant then ran northbound through the apartment complex parking lot toward the parking area at 6324 Brookside Plaza. As officers pursued him on foot, the defendant fired additional shots at the officers.

### *Counts Three & Four*:

The defendant ran to the parking lot at 6318 Brookside Boulevard behind the Jalapeno's Mexican Restaurant. There, the defendant contacted A.V. and pointed his firearm at A.V. and two other individuals. The defendant then entered A.V.'s 2007 silver Toyota Corolla bearing Missouri license plate NJ9A4A and fled the area. The use of the firearm and the threat it posed prevented A.V. from resisting the defendant's theft of the vehicle.

After the defendant was in A.V.'s vehicle, an officer ran into the parking lot and yelled, "Stop!" The defendant fled the area at a high rate of speed. An officer fired one shot into A.V.'s vehicle trying to stop the defendant. After A.V.'s vehicle was out of sight, the officer took off his vest and patted himself down looking for injuries. The officers were not injured in the incident.

On June 22, 2023, at approximately 10:20 p.m., officers with the Prairie Village, Kansas Police Department received notice that the Toyota Corolla stolen from A.V. was in their jurisdiction. The vehicle's license plate was detected on license plate reading cameras that revealed the vehicle was traveling southbound at Tomahawk Road and Mission Road in Kansas at 10:17 p.m.

Officers canvassed the area at W. 73rd Street and Cherokee Lane in Prairie Village and found the Toyota Corolla abandoned on the side of the street near the Indian Hills Golf Course. The vehicle had noticeable bullet holes in the windshield.

Prairie Village and KCMOPD officers set up a perimeter and began searching for the defendant. Prairie Village received a call from a resident stating their Ring camera captured a male trying to enter their backdoor. Officers observed the footage and noted the individual matched the description of the defendant. The individual was also carrying a backpack.

During the search, a Shawnee, Kansas officer and the canine "Draco" located a grey shirt; a black baseball hat; and holster on the northside of the golf course. A Prairie Village officer and canine "Blitz" continued the search and located a Taurus, Spectrum .380 caliber, semi-automatic firearm, bearing Serial Number 1J004247. The recovered firearm was loaded with a magazine containing

3

five (5) live rounds of .380 ammunition. Even with the assistance of canine unites, the defendant was not located.

On June 23, 2023, Prairie Village officers met with the maintenance supervisor at Indian Hills Country Club. The maintenance supervisor located a revolver and pocket-knife belt case just south of the driving range on the golf course. Specifically, he located a black, Charter Arms, .38 caliber revolver, bearing Serial Number 2278802. In the belt case, officers located a fully loaded six (6) round magazine for a .380 semi-automatic firearm.

On June 23, 2023, at approximately 6:40 a.m., officers with the KCMOPD were dispatched to 1212 Arno Road, Kansas City, Missouri, regarding an armed robbery that occurred earlier in the morning. Upon arrival, officers contacted the victim, J.H. During the reported robbery, the victim was walking at Arno Park near Ward Parkway when the defendant approached him and demanded the t-shirt J.H. was wearing. J.H. complied and gave the defendant his shirt. J.H. did not see a weapon but stated the defendant was hiding one hand under a shirt.

### *Count Seven*:
On June 23, 2023, at approximately 6:04 a.m., officers with the KCMOPD were dispatched to 1020 W. 69th Street, Kansas City, Missouri, regarding an armed carjacking. Upon arrival, officers contacted M.O., the victim, who stated that at approximately 5:50 a.m. his black 2012 Acura TLX with Missouri license plate EH3E5W was stolen from him. The window of M.O.'s vehicle was down, and he was stopped at W. 69th Street and Valley Road facing southbound. This location is within the Western District of Missouri.

While M.O. was stopped at a stop sign, the defendant approached him, pointed a knife at M.O.'s neck, and demanded that M.O. get out of the vehicle. M.O. complied and exited his vehicle. The defendant entered the vehicle and fled the area.

At approximately 6:35 a.m., troopers with the Missouri State Highway Patrol ("MSHP") observed a 2012 Acura, M.O.'s vehicle, traveling northbound on Interstate 35 in excess of 90 miles per hour. Troopers attempted to stop the Acura, driven by the defendant, near NE 336th Street in Cameron, Missouri, but it failed to yield. A vehicle pursuit ensued. A short distance later, Troopers lost sight of the Acura. At the time of this pursuit, MSHP was unaware of the previous offenses committed in Kansas City, Missouri. Members of the MSHP and the Daviess County Sheriff's Office conducted an area canvass trying to locate the defendant.

### *Count Eight*:
On June 23, 2023, at approximately 6:56 a.m., Daviess County Sheriff's Office Deputies were dispatched to Hwy Y at Ridge Avenue, which is approximately one mile north of Winston, Missouri, regarding an attempted carjacking. This location is within the Western District of Missouri. A law enforcement officer conducting an area canvass after the pursuit observed a vehicle

4

parked in the roadway. The defendant was standing next to the vehicle and a light blue bicycle was lying next to the road. As the officer drove closer, the defendant walked away from the vehicle, jumped a fence, and ran eastbound.

Before the officer arrived, the defendant produced a knife and pointed it towards the neck of the driver of the vehicle, D.S., and told her to give him the vehicle. D.S. refused the defendant's demand and drove away. D.S. then realized a police officer was behind her. She stopped and provided law enforcement with a statement regarding the incident.

### *Count Nine*:

While on scene, the officer was advised a vehicle was stolen from 27865 140th Street, Winston, Missouri. That location is within the Western District of Missouri. Law enforcement officers responded to that residence and contacted the victim, T.M. At approximately 7:45 a.m., the defendant entered her home through the front door. The victim was home alone at the time of the intrusion. The defendant had a knife behind his back and told T.M. that he would not hurt her if she would just give him the keys to her car. T.M. pointed to where the key was located. The defendant took her key and stole her vehicle out of her driveway. T.M.'s vehicle was a white 2009 Ford Taurus bearing Missouri license plate BC1J4F.

Officers located the defendant operating T.M.'s vehicle and attempted to stop the vehicle. The defendant failed to yield and was involved in an extensive police pursuit that crossed Daviess, Gentry, and Harrison Counties. When the vehicle became completely disabled in Gilman City, Missouri, the defendant exited the vehicle and fled on foot until law enforcement apprehended him. After his arrest, the defendant provided a *Mirandized* statement to investigators. In that statement, he admitted to shooting at people, shooting at the police, stealing cars, fleeing police, robbing someone of their clothing, and then fleeing law enforcement.

The defendant agrees the vehicles he stole, described here in, were transported, shipped, or received in interstate or foreign commerce. He also agrees that he took the vehicles by force and intimidation.

The parties agree no evidence or testimony other than that of the case agent will be required to be produced by the United States at the sentencing hearing to establish by a preponderance of the evidence any contested facts needed to support the application and calculation of the advisory Guidelines range in this case.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range

5

under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

**5. Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Indictment, charging him with Attempted Hobbs Act Robbery, the maximum penalty the Court may impose is twenty years' imprisonment, a $250,000 fine, and a three-year term of supervised release. That offense is a Class C Felony.

The defendant understands that upon his plea to Counts Three, Seven, Eight, and Nine, charging him with Carjacking or Attempted Carjacking, the maximum penalty the Court may impose is fifteen years' imprisonment, a $250,000 fine, and a three-year term of supervised release. These offenses are Class C Felonies.

The defendant further understands that upon his plea to Count Four, charging him with Brandishing a Firearm in Furtherance of a Crime of Violence, the minimum penalty the Court may impose is 84 months' imprisonment. The maximum penalty the Court may impose is life imprisonment, a $250,000 fine, and a five-year term of supervised release. This offense is a Class A Felony. The defendant further understands that any term of imprisonment imposed on Count Four must be ordered to run consecutive to any other term of imprisonment imposed upon the defendant.

Additionally, the defendant understands that the Court shall impose a $100 mandatory special assessment on each count to which he is pleading guilty, which must be paid in full at the time of sentencing.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows: A sentence comprised of a term of imprisonment between 204 and 240 months, 3 years of supervised release, no fine, and a $600 special assessment. If the Court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the Court rejects this plea agreement, it must, on the record and in open court, inform the parties that the Court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw the defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment between 204 and 240 months, the Court will impose a three-year term of supervised release, as agreed upon herein;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release; and

    e. any sentence of imprisonment imposed by the Court will not allow for parole.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the charges to which the defendant has pled guilty for which it has venue and which

7

Case 4:24-cr-00114-RK   Document 27   Filed 09/18/25   Page 7 of 16

arose out of the defendant's conduct described *supra*. The Government agrees to dismiss Counts Five and Six at the time of sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement.

The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further

8

reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw defendant's plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. However, if the Court accepts this Rule 11(c)(1)(C) plea agreement, the Court is bound to impose a sentence within the range agreed upon by the parties, as set forth in paragraph 6 above;

   b. The defendant has admitted his guilt and clearly accepted responsibility for his actions and has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a *three-level* reduction pursuant to § 3E1.1 of the Sentencing Guidelines unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

   c. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

9

d. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels;

e. The defendant and the United States confirm that the agreed sentence set forth in paragraph 6 above is both reasonable and authorized by law;

f. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

g. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11.** **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.** **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

10

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offenses to which he pleaded guilty, and if the defendant answers

those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to felony offenses and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

   a. The Court must order restitution to the victims of the offenses to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

   b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

   c. The defendant willfully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or

12

other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

   d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

   e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

   f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

   g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

   h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

   i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Government Will Move to Remand Defendant Into Custody At The Plea.** The defendant understands that the crime to which he is pleading in Count Four, that is, brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), is an offense for which the maximum term of imprisonment is life. Accordingly, the Government believes that pursuant to 18 U.S.C. § 3143(a)(2), the Court must detain the defendant after he pleads guilty to that offense.

**23. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Dated: 9/18/25

R. Matthew Price
United States Attorney

_/s/ Ashleigh A. Ragner_
Ashleigh A. Ragner
Assistant United States Attorney
Violent Crime & Drug Trafficking Unit

I have consulted with my attorney and fully understand all my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 9/18/25

_/s/ Brandon Fletcher_
Brandon B. Fletcher
Defendant

I am defendant Brandon B. Fletcher's attorney. I have fully explained to him his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, the defendant's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 9/18/25

_/s/ William J. Raymond_
William J. Raymond
Attorney for Brandon B. Fletcher